THE AMERICAN TRANSPORTATION COMPANY *vs.* THE CITY OF BUFFALO.

The act of July 21, 1853, amending the section of the revised statutes relating to the assessment and collection of taxes against moneyed or stock corporations, and to the method by which such corporations may be relieved from the payment of any tax, did not affect the charter of the city of Buffalo, or change the rule prescribed therein for the guidance of the board of assessors, in such cases.

Hence, if the board of assessors of that city is satisfied that a corporation has, during the previous year, been in the receipt of *any profit or income,* it is not obliged to strike the name of such corporation from the assessment roll, although its *net* annual profits, or clear income, have not been equal to *five per cent* on its capital stock.

CONTROVERSY submitted without action, pursuant to § 372 of the code.   The plaintiff was incorporated and organized as a stock corporation on the 24th of January, 1855, pursuant to the act entitled "An act for the incorporation of companies to navigate the lakes and rivers," passed April 15, 1854.   The capital paid in and secured to be paid was $900,000.   Its office and place of business was in the first ward of Buffalo.   The board of assessors of the city, on or before the

American Transportation Co. v. City of Buffalo.

1st day of May, 1855, made and completed the annual assessment roll for each ward, inserting the name of the plaintiff and the amount of its capital.   On the 12th of May, before the roll was revised or submitted to the common council, the plaintiff caused an affidavit to be made by its president and secretary, and to be presented to, and filed with, the board of assessors.   The affidavit stated when the plaintiff was incorporated, its capital and place of business; that it had received in different sums, at different times since the 24th of January, 1855, the sum of $11,781 as and for the price of the carriage of goods, wares and merchandise, by the company.   That the company had paid out and expended for the wages of men, employed in the carrying business of the company, the sum of $21,850 for services performed; that the company had paid out and expended for other expenses of the company in and about its business, the further sum of $13,850, and also for the repair of its boats and propellers the sum of $32,800.   That the company had never been in the receipt of any income or profits, except as stated. That the company owned no real estate; that none of the capital stock was owned by the state, or any state, or any incorporated library, or charitable institution.   That the company had not been during the preceding year, or ever, in the receipt of net annual profits or clear income equal to five per cent on the capital stock of such company paid in or secured to be paid in, or in the receipt of any net annual profits or clear income to any per centage or amount.

The company, on the affidavits, requested and required the board of assessors to strike its name from the assessment roll, or to permit the company to be discharged from the payment of taxes and assessments during the year 1855, and to commute for the same without the payment of any sum.   The board of assessors refused to comply with the request.   Further proceedings were had, resulting in the collection of the tax, amounting to over $9000.   The defendant received the money, and the plaintiff demanded judgment against the defendant for the amount so received by the city, with interest, &c.

*Geo. B. Hibbard*, for the plaintiff.

*A. J. McNitt*, for the defendant.

*By the Court*, MARVIN, J. "All lands and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." (1 *R. S.* 387, § 1.) All moneyed or stock corporations deriving an income or profit from their capital, or otherwise, shall be liable to taxation on their capital, in the manner hereinafter prescribed." (1 *R. S.* 414, § 81.) The assessors are required to enter all incorporated companies, liable to taxation in their respective towns, in the assessment roll, and to specify the amount of the capital of the company, paid in and secured to be paid in, &c. (*Id.* 415, § 5.) If the president or other officer of the company shall show, to the satisfaction of the board of supervisors, at their annual meeting, within two days from the commencement thereof, by the affidavit of such officer, to be filed with the clerk of the board, that such company is not in the receipt of any *profit or income*, the name of such company shall be stricken out of the assessment roll, and no tax shall be imposed upon it. (*Id.* 416, § 9.) The statute contains provisions relating to manufacturing, marine insurance, turnpike, bridge and canal companies, which it is not now necessary to notice. The legislature, April 13, 1853, passed an act to revise the charter of the city of Buffalo. The 5th title of the act (*Sess. Laws of* 1853, *p.* 472) relates to the assessment and collection of taxes, and the funds and expenditures of the city. The board of assessors of the city are to prepare an annual assessment roll of each ward, and to proceed, as near as may be, in the manner required by town assessors, except as in the act provided. Their assessment rolls are to be submitted to the common council, who have the same power to equalize them that the supervisors have to equalize the rolls of the county, &c. The assessors are to prepare two rolls as equalized, and certify and deliver one of them to the supervisors of the county, as and for the assessment roll for county purposes.

American Transportation Co. *v.* City of Buffalo.

By the 4th section, moneyed or stock corporations or banking associations in the city, liable to taxation upon their capital, are required, before the 15th day of January in each year, to present to the board of assessors the sworn statement required by certain provisions of the revised statutes. It is then added: "But if the board of assessors shall be satisfied, in the manner required by section 9 of said article, that any such corporation or association is not in the receipt of any *profits or income*, or if the said board shall be satisfied, in the manner required by section 13 of said article, that any turnpike, bridge or canal company, included in the roll, has not a net annual income exceeding five per cent on the capital stock paid in and secured to be paid in, it shall strike the name of such company from the roll." The distinction between "*profits and income*," and "*net annual income*," will be noticed.

On the 21st of July, 1853, the legislature passed an act (*Laws, ch.* 654) amending the revised statutes. The 9th section of the revised statutes, referred to in the charter as above stated, was so amended as to provide that if any incorporated company, named in the assessment roll, shall show to the satisfaction of the board of supervisors, at their annual meeting, within two days from the commencement thereof, by the affidavit of such officer, to be filed with the clerk of the board, that such company has not been, during the preceding year, in the receipt of *net annual profits, or clear income*, equal to five per cent on the capital stock of any such company, paid in or secured to be paid in, after deducting, &c. such company shall be entitled to commute for their taxes on such capital stock, by paying directly to the treasurer of the county, in which the business of such company is transacted, a sum equal to five per cent on such net annual profits or clear income."

It has been necessary to refer fully to these statutes, in order to present clearly the question presented in this case, and that question is, what effect has the act of July 21, 1853, produced upon the provision of the charter of the city, section 4, title 5, referring to section 9, above cited, of the revised statutes, as to

the manner of satisfying the board of supervisors, and the facts to be established.

If the provision in the charter referring to section 9 of the revised statutes has undergone a change, with the change of the section of the revised statutes occasioned by the act of July 21, 1853, then it is clear that the American Transportation Company was not liable to any taxation. It had not been, during the preceding year, in the receipt of *net* annual profits or clear income equal to five per cent, &c. It would have had the right to commute by paying five per cent upon "such net annual profits or clear income;" and as it had made no net annual profits or clear income, it would not have been obliged to pay any sum.

If, on the other hand, the provision of the revised statutes referred to in the charter, and the rule as prescribed in the charter remain in force as to the plaintiff, unaffected by the act of July 21, 1853, then the tax was properly assessed and collected, as the plaintiff had received profits or income. In my opinion the tax was properly assessed and collected.

The act of July has not affected the right of the city to impose and collect the tax. The plaintiff, as to the city, cannot avail itself of the provisions of the act of July. It was, by the revised statutes, liable to taxation. It derived an income or profit from its capital. It was not within any of the exceptions of the revised statutes. By the 9th section, if it was not in the receipt of *any profits* or income, no tax could be imposed, and the name of the company in such case was, upon certain proof, to the board of supervisors, to be stricken from the roll. By the charter, if the board of assessors should be satisfied, *in the manner provided in the section referred to in the revised statutes,* i. e. by the affidavit of the president or other proper officer, "that any such corporation or association is not in the receipt of any profits or income," &c. then the board "shall strike the name of such company from the roll." This is the language used in the charter. The reference to the revised statutes is simply to the manner of producing the evidence, and the kind of evidence to satisfy the board of assessors. The

American Transportation Co. *v.* City of Buffalo.

facts, touching which the board of assessors is to be satisfied are, themselves, incorporated in the charter, and not affected in the least by the act of July, 1853. They are an integral portion of the charter, not dependent upon the language or provisions of the revised statutes. True, they are taken from the revised statutes, but an amendment of the statute, in this respect, from which this provision is taken, will not amend or alter this provision. It is not necessary, therefore, to inquire what would have been the effect, had the provision in the charter simply referred to and adopted the provision in the revised statutes, of a subsequent amendment of the provision of the revised statutes. I do not wish, however, to intimate any doubt upon such a question. I suppose, in such a case, we should read the charter as though the provisions of the statute referred to, and adopted, were incorporated in the charter; and that a subsequent repeal or amendment of the statute would have no effect upon the charter. But I will not discuss the question.

It is not necessary, in the present case, between the plaintiff and the city, to say what the rights of the plaintiff are, touching the county taxes. It may well be that, as to the county taxes, the plaintiff could avail itself of the provisions of the act of July, 1853. It is true that the city board of assessors is to certify and deliver to the supervisors as and for the ward assessment roll for county purposes, a copy of the roll as equalized by the common council. The board, however, act under the general law, and as amended by the act of July, 1853, by which the president, &c. of any incorporated company named in the assessment roll, may make the affidavit as to *net* annual profits or clear income, &c. and the statute declares the consequences which shall follow. It is not necessary to pursue the subject. The defendant must have judgment.

[ERIE GENERAL TERM, November 10, 1856, *Bowen*, *Greene* and *Marvin*, Justices.]