Ridgely *vs.* Bond & Wife.

(Decided June 26th, 1862.)

---

# John Ridgely, of John, *vs.* Joshua B. Bond, and Rebecca J. Bond, his wife.

A decree for a sale of land, and directing the proceeds to be brought into court for distribution, does not fix the rights of the parties, but where par-

ties have executed a deed, containing admissions as to the state of the title, and these admissions are confirmed by their answers, such parties, and all claiming under them, are estopped thereby.

A devise, by *implication*, is sometimes allowed, but the implication must be plain, and not merely a possible or probable one: no words in a will ought to be construed so as to defeat the title of the heirs at law, if they can have any other signification.

A testatrix devised all her lands to her daughter, Elizabeth, during her *single life*, but if she *marries*, then the land is to be equally divided between her and her sister, and their heirs: but if her sister Sarah should die without issue, then the land shall be the right and estate of Elizabeth and her heirs, but if Elizabeth should die *without issue*, then the land shall be equally divided between my two sons and their heirs. HELD:

1st. That the first section of this clause invested Elizabeth with a life estate in all the lands, subject to be divested of one-half in the event of her marriage, which moiety would then vest in Sarah, and if she died without issue, would revert to Elizabeth.

2nd. The subsequent sections, by implication, give Elizabeth a fee-tail *in the whole*, and the devise over in favor of the sons, being, after an indefinite failure of issue, is void.

3rd. The effect of this construction is, under our Acts of Assembly, that upon the death of Elizabeth, intestate, and never having been married, the fee descended to *her heirs* at law.

A defendant to the original bill is entitled to revive the decree which had abated by the death and marriage of some of the parties, in order that he may be allowed his costs and charges, a defendant; or his representative, may revive a suit in every case where he may derive a benefit from further proceedings.

Where the decree, sought to be revived, directs land to be sold for distribution among the parties entitled, not as heirs only, but as incumbrancers also, (some of the parties claiming large liens,) these incumbrances are personal assets, and the personal representatives of such parties must be made parties to the bill of revivor.

The character of a bill is determined rather by the allegations and relief prayed, than the *title* it assumes: a bill called a *bill of revivor*, will be treated as an *original bill in the nature of a bill of revivor*, if it contains the proper *allegations*.

The chancery or equity pleadings of this State are not held to a rigid compliance with the rules of English practice, or the technicalities that control proceedings at law.

Where, under the original decree, one of the parties would have been held to account for rents and profits, if he had continued to occupy and enjoy

Ridgely *vs.* Bond & Wife.

the land, it is not new matter of litigation, for the *bill of revivor* to require a similar account of one deriving title from, and claiming under, such party, and who held and occupied the land.

Where to a bill for an account of rents and profits the defendant pleads *limitations*, and claims allowance for improvements, such allowances must be deducted from the amount of the rents and profits for the *whole period* the land was lawfully in the possession and occupancy of the defendant.

APPEAL from the Equity side of the Circuit Court for Howard County.

This appeal is from a decree passed September 10th, 1858, for a sale of land and an account of rents, and profits and improvements, on a bill filed by the appellees against the appellant. The facts of the case are fully stated in the opinion of this court. The court below, (BREWER, J.,) on passing the decree, delivered the following opinion:—

"The bill professes to be a bill of revivor, when, as the defendant contends, it should have been an original bill in the nature of a bill of revivor. A decree passes for a sale of the land, but before it was sold, the complainant died, and also the defendant. The defendant's interest in the property passed through several hands by devise or descent, and was finally purchased by the present defendant. The object of the present bill is not only to revive the present decree, but claims rents and profits from the defendant. The proper proceeding is, therefore, by original bill in the nature of a bill of revivor. This bill although called a bill of revivor, contains all the necessary allegations of an original bill, which would be required to accomplish the object sought, and the prayer also seems to be sufficient. I do not see any necessity for delaying the case, that the complainants might amend, which is what the court would direct, and am ready therefore to pass a decree on the present bill.

"The complainants' title to relief was established by the former decree, and the present defendant claiming directly from and through the defendants in that case, is bound by the decree.

"The defendant claims, in his answer, to be allowed for improvements and repairs, and pleads limitations as to the rents and profits. I think he ought to be allowed for improvements, repairs, &c., but only out of the *whole rents and profits.* Limitations would apply in this case to all the rents accrued prior to three years before the filing of the bill, but I do not think there would be any equity in allowing the defendant for improvements, out of that portion of the profits which have accrued within that period. It is not an equitable plea. The court, however, cannot reject it, but it can refuse the allowance for improvements to that extent. A decree may be prepared, in conformity with these views, for a sale of the land, and an account of the rents and profits and improvements."

From the decree, the purport of which is stated in the opinion of this court, the defendant appealed.

The cause was argued, originally, before Tuck, Bartol and Goldsborough, J., and on a re-argument ordered by the court, was again argued before Bowie, C. J., Bartol, and Cochran, J.

*Thomas Donaldson* for the appellant.

1st. The appellants were not entitled to a revivor of the decree as *heirs* of Henry Howard, because under the devise in Achsah Howard's will, the land affected by the decree, after the death of Elizabeth Howard, became the property of Sarah Elder alone, subject, perhaps, to the debt due to Henry Howard for moneys advanced for the support of Elizabeth, to secure the payment of which it was conveyed by the deed of 1814; if any one could revive it, it could only be the *personal representative* of Henry Howard. This point depends upon the construction of this provision of the will of Achsah Howard: "I give and bequeath unto my daughter, Elizabeth, all my land during her single life, but if she marries, it is my desire that the land shall be equally divided between her and her sister, their heirs and assigns, *but if her sister, Sarah Elder, should*

die *without issue, it is then my desire that the land shall be*
*the right and estate of Elizabeth, her heirs and assigns,* but
if Elizabeth should die without issue, it is then my will and
desire, that my land shall be equally divided between my sons
Brutus and Ephraim, their heirs and assigns." It was evi-
dently the intention of the testatrix, that the *daughters* and
*their issue* should be preferred to the sons, and a fee, by *neces-*
*sary implication,* is raised in *favor of Sarah Elder,* to the exclu-
sion of the sons, Brutus and Ephraim. This construction seems
to be the *only one* that will gratify the intention, and it becomes
more apparent by careful consideration, and by long study of
the will, and brooding over the language used. It is submit-
ted, also, that such a construction is fully sustained by the au-
thority of 1 *Jarman on Wills,* 488 to 498, and cases there
cited.

2nd. Even if the complainants have any interest in the land
as *heirs* of Henry Howard, they could not revive the decree
without joining with them, as a co-plaintiff, the *administratrix*
of Henry Howard, or making her a defendant on her refusing
to join in the bill. If there was no such administrator living,
then letters *d. b. n.* should have been taken out for the pur-
poses of this suit, for the debt claimed in the original suit by
the administratrix of Henry Howard can only be represented
by an administrator *d. b. n.*

3rd. Supposing the personal representatives of Henry Howard
to have joined in the bill, yet a bill of revivor can be brought
only against the legal representatives of the deceased parties,
as the heirs and personal representatives of Sarah Elder. It
could not be brought even against a devisee of Sarah Elder,
much less against the appellant, the assignees of devisees of a
devisee of Sarah Elder.

4th. The personal representatives of Charles and Sarah El-
der should have been made parties as directly interested in the
distribution of the proceeds on account of their claim for ad-
vances to Elizabeth, under the provisions of the deed of 1814.

In support of the three preceding points, see *Alex. Ch. Pr.,*

103, 104; *Story's Eq. Pl.*, secs. 335, 354, 363, 374, 377 to 379, and notes, 382; 1 *Merivale*, 364, *Boddy vs. Kent;* 11 *Ves.*, 306, *Fellowes vs. Williamson;* 2 *Sumner*, 383, *Bettes vs. Dana;* 3 *Mason*, 508, *Slack vs. Walcott;* 13 *Ves.*, 161, *Merrywether vs. Mellish.*

5th. By the decree appealed from, the decree of 1829 was revived as against the appellant, and a trustee appointed to make sale of the land. Although the judge, in his opinion, declares that an original bill, in the nature of a bill of revivor, would have been the proper proceeding in such a case, yet, he says, he does not see the necessity of delaying the case that the complainant might amend, which is what the court would direct. The appellant contended that the bill of the present complainants should have been dismissed, because an *original bill* should have been filed. But if an original bill, in the nature of a bill of revivor, was necessary, how could a mere bill of revivor answer the purpose? If amendment was necessary to make the bill a proper one, how could a decree be given without first requiring the amendment? The court could prescribe terms for prompt amendment, but the amendment must be made; otherwise the rules of equity pleading are utterly nullified. 2 *Paige*, 358, *Douglass vs. Sherman*, 2 *Paige*, 365, *Washington Ins. Co. vs. Slee.*

6th. But a bill of revivor, and an original bill in the nature of a bill of revivor, are brought solely to carry on a proceeding in the same manner as if the original parties had continued in existence; and new matter applying, not to any of the original parties, and arising out of transactions with which they were not connected, but solely relating to the new party, cannot be introduced into such bills, nor can any other relief be prayed besides that prayed in the first instance. Thus one of the objects of the present bill of revivor, was to claim from the appellant rents and profits which he derived from the land, after the death of the parties to the first proceeding, there having been no such claim against any one in that first proceeding. This could not be done, even in an original bill in the nature of a

bill of revivor; and it was error, in this case, to pass a decree obliging the appellant to account for rents and profits.

7th. There was error, also, in this decree, because the plea of limitations was disregarded as to rents and profits received by the appellant more than three years before the filing of the bill of the appellees, January 27th, 1857. In the judge's opinion, he asserts that the plea of limitations could not be rejected, and that the appellant's claim for improvements should be allowed; but decides that the claim for improvements should be allowed out of the *whole rents and profits.* This is undoubtedly the right principle, but the decree does not carry it out. On the contrary, it charges him with the whole rents and profits, and credits him with the amount laid out for improvements, without any reference to the plea of limitations. Thus, if the amount laid out for improvements were less than that part of the amount of rents and profits which was barred by limitations, he would now have to pay, under the decree, a portion of rents and profits which were received more than three years ago. This is error. *Angell on Lim.,* 432, 460, 466. *Amer. Law Reg.,* (*Nov., Dec.,* 1860,) 32, *Roberts vs. Moore.*

*A. H. Hobbs,* for the appellees.

1st. To revive a decree when some of the parties have alienated their interests since the decree, and to reach and affect the alienee, *an original bill in the nature of a bill of revivor* is the proper proceeding. 3 *Mason,* 509, *Slack vs. Walcott. Story's Eq. Pl.,* secs. 370 to 384. *Greenl's Ev.,* secs. 522, 551. 35 *Law Lib.,* 394. What then is the character of this bill which the appellees insist is substantially correct? A court of chancery looks alone to the *allegations* and *proofs,* as guides to its final determination. Although in the introductory part of this bill, it is called a *bill of revivor,* simply, still, all the *allegations* necessary to make it *an original bill in the nature of a bill of revivor,* are fully made and charged. The bare *nomination* of a bill avails nothing,—it is *classified* by the character of the *allegations,* if they are properly made,—if

the *necessary facts* are alleged, it is all that is required by the strictest rules of equity pleading;—relief is granted or withheld, *secundum allegata et probata.* 14 *Md. Rep.*, 156, *Davis vs. Reed.* 5 *G. & J.*, 450, *Birely vs. Staley.* 10 *G. & J.*, 100, *Gibson vs. McCormick.* 1 *Md. Ch. Dec.*, 156, *Crain vs. Barnes.* 2 *Md. Ch. Dec.*, 198, *Wootten vs. Burch.* *Story's Eq. Pl.*, secs. 374, 386. No objection, therefore, it is submitted, can be sustained to the *form* of this bill.

2nd. The defence of limitations cannot be sustained, because the appellees and appellant were *tenants in common,* and, in such a case, the possession of one is the possession of all, and no advantage from mere lapse of time can be taken by any one against his co-tenant. As between parties thus situated, there is a *fiduciary relation,* which prohibits the application of the statute,—*tenants in common are mutual trustees.* 4 *Kent,* 370. 6 *Dana,* 176, *Lee, et al., vs. Fox. Ibid.,* 278, *Sneed vs. Atherton.* 4 *H. & J.,* 430, *Fishwick vs. Sewell.* 2 *H. & McH.,* 254, *Lloyd vs. Gordon.* 5 *Wheat.,* 124, *McClung vs. Ross.* 6 *G. & J.,* 92, *Callis vs. Tolson.* 7 *G. & J.,* 42, *Cole vs. Hebb.* 4 *Day.,* 273, *Doolittle vs. Blakesley. Adams on Eject.,* 48, 84, 87. 2 *G. & J.,* 184, *Gwynn vs. James.* 17 *Md. Rep.,* 436, *Van Bibber vs. Frazier.* 7 *Wheat.,* 107, *Ricard vs. Williams.* 5 *Johns. Ch. Rep.,* 407, *Van Horne vs. Fonda.* But further, the parties here having no redress at law, were compelled to seek relief in equity, where alone their rights could be vindicated, and as the right to recover rents and profits depended upon the successful assertion of title under the original proceeding, and as consequent thereon, *no right of action previously accrued* to the appellees, and, therefore, limitations could not be pleaded. 3 *Gill,* 161, *Dugan vs. Gittings.*

3rd. What *interest* do the appellees hold in the property? This depends, in part, upon the will of Achsah Howard. Upon the facts disclosed by the record, the inquiry arises whether the parties *derive title* under this will, or take as her *heirs at law.* The peculiar phraseology of this will renders it

especially necessary to adopt the rule in *Douglas vs. Blackford*, 7 *Md. Rep.*, 22; that is, *to construe the will rather by its own language, than to rely implicitly upon adjudged cases.* With this rule in view, there is, I think, little difficulty in construing this will:—

1st. The devise to Elizabeth Howard, *for and during her single life*, and her death *without marrying*, left the *remainder undisposed of*, and it descended to the heirs of the testatrix, Achsah Howard, for Sally Elder was only to become a bene-ficiary under the will in the event of the *marriage* of Elizabeth Howard, and Brutus and Ephraim were to take in the event of the death of Sally Elder, *without issue*, followed by the death of Elizabeth, without issue, which events did not happen. Then there was no testamentary disposition of the *residuum* after the *single life* of Elizabeth, and at this point, the *law* assumed control, and disposed of the estate. Under the terms of the will, the land passed to the heirs of Achsah Howard *as tenants in common*, viz: to Dr. Howard, under whom the appellees claim, and to Sally Elder, under whom the appellant claims. 1 *Jarman on Wills*, 502. Again, the *marriage* of Elizabeth was a condition *precedent*, the performance of which was absolutely and indispensably necessary, *before* the devise over to Sally Elder could take effect. 1 *Jarman*, 798 to 800. 2 *Story's Eq.*, sec. 1306. 4 *Kent*, 125. 2 *Bl. Comm.*, 157. If, therefore, the performance of the condition *precedent* becomes impossible, or is not performed, the *estate does not vest*. It is not so, however, as to the conditions *subsequent*. 1 *Jarman*, 806. Elizabeth *did not marry*—the condition *precedent* was not performed—consequently, Sally Elder took *nothing under the will*. She did take, however, as *heir* of Achsah Howard, and as *tenant in common* with Dr. Howard, *an undivided half interest in the land*. Under this exposition of the will, therefore, the appellees hold the *fee-simple* interest of *one-half*, exclusive of their interest under the mortgage of Elder and wife.

2nd. But if the devise to Sally Elder, took effect *by implica-*

*tion*, notwithstanding Elizabeth did not marry, still it could be only to the extent of an *undivided half interest*, and the remaining half descended to the heirs of Achsah Howard. By no possible construction, it seems to me, could Sally Elder take *under the will*, more than the undivided half. There is no cross-remainder here; for if Sally Elder and her sister Elizabeth, took equal shares, there was still, as to each, an *indefinite failure of issue*, the share of each vesting absolutely in the *first taker*. To make out a cross-remainder you must assume the existence of an *estate tail*, as preliminary thereto;—it has no application to an estate in fee. 2 *Jarman*, 472, 479. 2 *Bl. Comm.*, 381. So under the most favorable view for the appellant, the appellees have a *fee-simple* interest in the land. I think, however, the first interpretation is the correct one, viz: that the appellees hold one-half as heirs.

4th. I assume confidently, then, that the appellees have an interest in the land, and are, *per* consequence, interested in the further prosecution of this suit, and proper parties, therefore, to move to revive the old decree. *Story's Eq., Pl., sec.* 372. A defendant as well as plaintiff, may revive, and especially may a *defendant* revive *after decree passed. Story's Eq. Pl., sec.* 376. And it may be further said, that by the mortgage of 1814, from Elder and wife to Dr. Howard, *all their interest* passed to him, and he being mortgagee, his heirs were necessary parties to foreclose the mortgage, the legal estate being in them. 11 *G. & J.*, 210, *Chase vs. Lockerman. Story's Eq. Pl.*, 74, (*a*) 200. Now Gray and wife claiming under the Elders, could only convey to the appellant such estate as the Elders had, and that was but a mere equity of redemption. 6 *H. & J.*, 23, *Tongue vs. Morton*. And furthermore, the appellant was a purchaser *pendente lite*, and whatever estate he acquired was subject to the operation of the decree, and, in fact, he might have been *ousted* without notice. 1 *Story's Eq., secs.* 405, 406. Again, having in the deed by which he claims title, referred to the will of Rebecca H. Elder, which explains the title, and having free access to the chance-

Ridgely *vs.* Bond & Wife.

ry proceedings of 1829, he had *constructive notice* of the extent, nature and character of the property which he was about to purchase, and has now no claim to consideration on the ground of want of notice. 1 *Story's Eq.*, secs. 400, 401. As a prudent man he ought to have made inquiry, for certainly there was enough to put him on inquiry. 1 *Md. Rep.*, 419, *Price vs. McDonald.*

5th. As to the objection of the non-joinder of the administratrix, urged now for the *first time*, it is submitted no difficulty can arise. The rights of the parties to the original proceeding were fixed by the decree of 1829, and had the property been sold under that decree, and the money brought into court, it would have been distributed among the heirs according to their respective rights; and why should it not have been? The original suit was instituted by Dr. Howard's representatives praying a sale of the land to pay an admitted claim of Dr. Howard, for advances made to Elizabeth in her lifetime, amounting to $1086.17, with interest from the year 1800, and the defendants also preferred a claim, without, however, any sufficient proof. This whole matter was before the court, which had full jurisdiction over the subject and all the parties, and would have done full and complete justice by directing distribution to be made. What necessity was there for referring the business, half finished, to another tribunal? It is the especial province of a court of equity to avoid multiplicity of suits. 8 *Gill*, 397, *Barnes vs. Compton.* 1 *Story's Eq.*, secs. 542, 543, 571. Besides, there was no objection taken to the non-joinder in the court below. The point was not brought to the notice of that court by any sufficient averment in the answer, and consequently the objection is now too late, as this court only takes cognizance of questions submitted to, and passed on, by the court below. 2 *G. & J.*, 306, *Davis vs. Leab.* 4 *Md. Rep.*, 272, *Morgan vs. Briscoe, et al.* *Story's Eq. Pl.*, sec. 236, *notes*, 2, 4, and *sec.* 247, *note* 4. If the defence of non-joinder be taken by plea or answer, it must describe the *party* not joined by *name* or otherwise. *Story's*

*Eq. Pl., secs.* 237, 238, 542, 543. It seems the objection must in some way be taken, and the proper mode is by demur-rer. But again, the appellant is not, and cannot be aggrieved by the non-joinder of the administratrix, and therefore the decree must be affirmed as to him, for unless he has sustained injury by the decree below, he has no cause of complaint. 6 *Md. Rep.*, 399, *Pratt vs. Johnson*. If it should be found the decree does not, in terms, meet the merits of the case, it is per-fectly competent for this court, on affirmance, to make such appropriate addition as may secure and promote the rights of all parties concerned. 2 *Gill*, 107, *Jones vs. Belt*. 3 *G. & J.*, 348, *Diffenderffer vs. Winder*.

6th. But suppose the theory as to the non-joinder of the administratrix is erroneous, still the appellee, Rebecca J. Bond, was a *party* to the original bill, is a proper party here, and, in any event, the court would do no more than remand the case to make new parties, if they should come to the con-clusion that the administratrix is an *indispensable* party to the final determination of the cause. 8 *Md. Rep.*, 39, *Jamison vs. Chesnut*. And in that event the costs would abide the final result of the suit. 5 *Md. Rep.*, 613, 614, *Doub vs. Barnes*. It is submitted, however, that the decree ought to be affirmed.

Bowie, C. J., delivered the opinion of this court.

The original bill in this cause, was filed on the 26th of December 1826, by Nancy Bond, administratrix *d. b. n.* of Dr. Henry Howard and others, against Charles Elder, and Sarah his wife, and others, (of whom the complainant, Rebecca J. Bond, then a minor, was one,) in the High Court of Chancery of Maryland, whence it was transmitted to the Circuit court for Howard county, as unfinished and undisposed of. Its object was, to procure the sale of certain lands, to which the com-plainants and defendants were jointly entitled, and on which the complainant, the administratrix of Henry Howard, claimed a lien, by way of mortgage or contract, executed by Elder and wife to Howard.

The defendants, Elder and wife, consenting, (and a decree, *pro confesso*, against the non-residents, being passed,) a decree for the sale of the land, directing the proceeds to be brought into court, to be distributed under its order, was signed the 29th of October 1829. The trustees, appointed to execute the decree, afterwards, viz., on the 11th of February 1840, reported, that they had made two ineffectual attempts to sell the property, and that the land remained unsold; that the complainants, Nancy Bond and Mary Ann Howard, had married, and the defendants, Charles Elder and Sarah his wife, had died since the decree, and they prayed further order in the premises. No further proceedings were had until the 27th of January 1857, when the appellees filed a bill, entitled: "The Bill of *Revivor* of Joshua B. Bond, and Rebecca J. Bond his wife," reciting the original bill, and proceedings thereon, alleging the subsequent death of Charles and Sarah Elder, a devise by the latter of her interest in the lands mentioned in the original bill, to Rebecca H. Elder, a devise of the same by Rebecca to Ruth O. Shipley and Juliana H. B. Shipley, the intermarriage of Juliana with one George B. Grey, and a conveyance by Grey and wife, and Ruth O. Shipley, on the 14th of February 1848, of the lands in question, to the appellant, John Ridgely of John, who, it is charged, had been in possession several years before; and prays an account of rents and profits; that the decree for a sale, be revived, and the property sold or divided amongst the respective claimants, as may be most consistent with equity, and for general relief.

The defendant's answer admits he purchased of Grey and wife, and Ruth O. Shipley, who received their title from Rebecca H. Elder, who, as the respondent always understood, received her title from her mother, Sarah Elder, who was, in 1840, and had been for many years before, in undisturbed possession, and treated the property as her own. The appellant denied the rights of the complainants to revive the decree, or to account, but insisted if the complainants had any claim to an account, it was only for rents and profits accrued within three

years before the commencement of this suit, and claimed to be allowed the value of all permanent improvements made by him on the land.

The cause being set down for hearing, after general replication and commission executed and returned, the Circuit court of Howard county, sitting as a court of equity, decreed, that the property mentioned in the proceedings be sold, the money arising from the sales to be distributed under the order of the court; that the auditor take an account of the rents and profits of the property, during the time it has been lawfully in the possession and occupancy of the defendant, and charge the defendant with the same, and also take an account of the improvements and repairs made by the defendant, so far as they have enhanced the value of the property, and deduct the amount thereof from the amounts of the rents and profits. From which decree this appeal is taken.

The appellant contends:

1st. That the complainants had no right, as heirs of Henry Howard, to revive this suit, the title to the lands being in Sarah Elder alone, or those claiming under her.

2d. If they had any interest in the land, as heirs of Henry Howard, they could not revive without making his personal representative a party.

3d. A bill of revivor does not lie against the devisees of Sarah Elder, or the assignees of her devisees.

4th. The personal representatives of Charles and Sarah Elder should have been made parties.

5th. The proceeding should have been by an original bill in the nature of a bill of revivor.

6th. That new matter is introduced in this bill not applying to any of the original parties, or arising out of the transactions with which they were connected, and therefore it is a case for an original bill.

7th. That the plea of limitations was disregarded and overruled by the decree.

The first objection involves the construction of the will of

Achsah Howard, the common ancestor of the complainants, and those under whom the defendant claims.

It may be remarked, that the original bill, after referring to the will of Achsah Howard, charges, "that independent of the contract and agreement hereinafter set forth and made between said Henry Howard and the said Sarah Elder and Charles, her husband, on the death of the said Elizabeth, the land of the said Achsah would have descended as follows: one-third to the children and heirs-at-law of Henry Howard; one-third to Sarah Elder, and the remainder to the heirs of Brutus Howard." It further charged, that by the said contract and agreement, the said lands were mortgaged to secure whatever sums of money might be advanced by Henry Howard, for the use of Elizabeth Howard, and repairs of said estate, or by any other person, after the death of said Henry, for said purposes, that the said Henry Howard had advanced $1086 for the maintenance and care of said Elizabeth, (who had become a lunatic,) and Charles Elder and wife had made advances, the amount of which was unknown. By virtue of said agreement, the legal estate in said land was then vested in the heirs-at-law of said Henry Howard, and the heirs of said Brutus—two-thirds to the former and one-third to the latter—as tenants in common; the estate of said heirs of said Henry being chargeable, in equity, with the advances made by said Henry in his lifetime, and the advances made by Charles Elder and wife, any surplus arising from the sale of said lands, after paying said advances, belonging to the heirs of said Henry, and the said Charles and Sarah Elder, share and share alike. Exhibit B., the contract or agreement referred to, recites, that upon the death of Brutus, without children, and on the death of said Elizabeth, the parties thereto will, as heirs-at-law, and next of kin to the said persons, be sole owners of the land mentioned in the before recited division. This exhibit, and the material allegations of the original bill, were admitted by the answer of Charles Elder and wife, who consented to a sale, and prayed the proceeds might be brought into court, to be distributed under its order.

Whereupon the chancellor passed the decree of 1829, for the sale of the land, and directing the proceeds to be brought into court for distribution. Such decrees do not fix the rights of the parties, (*Fitzhugh vs. McPherson*, 9 *G. & J.*, 76,) but it is apprehended that Sarah Elder, and all claiming under her, would be estopped by the admissions of the deed recognised and confirmed by her answer of 1826.

The theory by which the heirs of Henry Howard are to be excluded is, that the terms of the will of Achsah Howard raise a fee, by necessary implication, in favor of Sarah Elder, to the exclusion of Brutus, Ephraim, and Henry Howard; that the daughters, and their issue, were to be preferred to the sons; it is insisted, that this interpretation alone gratifies the obvious intention of the testatrix, and is arrived at "by brooding over the will."

The courts have, in some instances, allowed of a devise by implication, where it has been very apparent, in order to support and effectuate the intention of the testator; but, in cases of this kind, the implication must be plain, and not merely a possible or probable one, *for the title of the heir-at-law being clear and obvious, no words in a will ought to be construed in such a manner as to defeat it, if they can have any other signification.* And Lord Eldon has said: "With regard to that expression, 'necessary implication,' I will repeat what I have before stated, from a note of *Lord Hardwicke's* judgment, in *Coriton vs. Hellier,* that in construing a will, *conjecture must not be taken for implication;* but necessary implication means, not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator, cannot be supposed." *Cruise, Tit. Devise, ch.* 10, *sec.* 19. *Willes Rep.*, 141. 1 *Ves. & Bea.*, 466.

The clause of the will to be construed by the court, is as follows:

"I give and bequeath unto my daughter Elizabeth, all my land during her single life, but if she marries, it is my desire that the land be equally divided between her and her sister,

their heirs and assigns; but if her sister Sarah Elder should die without issue, it is then my desire that the land should be the right and estate of Elizabeth, her heirs and assigns, but if Elizabeth should die without issue, it is then my will and desire, that my land shall be equally divided between my sons, Brutus and Ephraim, their heirs and assigns."

The first section of this clause of the will of Achsah Howard, (as we interpret it,) invested Elizabeth Howard with a life estate in all the lands devised, subject to be divested of one-half, in the event of her marriage; which moiety, in that event, vested in Sarah Elder; and which, if the said Sarah died without issued, reverted to Elizabeth. The subsequent sections then, by implication, give Elizabeth a fee-tail in the whole; and the devises over in favor of Ephraim and Brutus, being after an indefinite failure of issue, are void. The effect of this construction is, under our Acts of Assembly, to leave the fee to descend to Elizabeth's heirs at law, her brothers and sisters, and to divide the estate equally among all her collateral relations without disinheriting any. The construction contended for by the appellant cuts off one branch of the family, without any apparent reason, and works inequality, besides being opposed to the construction assumed in the original bill, agreed on in the contract of mortgage, admitted in the answer, and acquiesced in for many years by all concerned. According to these views, the appellees had, as heirs at law of Henry Howard, such an interest in the subject matter of the suit as entitled them to file a bill of revivor. Independent of this, the appellee, Rebecca, being a defendant to the original bill, was entitled to call upon the court to execute the decree, which abated by the death and marriage of some of the complainants and defendants, that she might be allowed her costs and charges in that behalf expended. 2 *Madd. Ch.*, 531, 534. Defendants, or or their representatives, may revive a suit, in every case where they may derive a benefit from further proceedings.

The second and fourth objections, that the complainants should have made the personal representatives of Henry Howard

and Charles and Sarah Elder parties to the bill of revivor, are, in our judgment, well taken. The decree, which is sought to be revived, requires the land to be sold, the proceeds to be divided among the parties entitled, not as heirs only, but as incumbrancers also, the complainant in the original bill, and defendants claiming large liens; these incumbrances are personal assets of the deceased parties, to be administered according to law, and without the presence of personal representatives the fund could not be distributed, or the title be made good to the purchaser.

The third and fifth points, that a bill of revivor does not lie against the devisees of Sarah Elder, and that the proceeding should have been by an original bill in the nature of a bill of revivor, may be considered together. The character of the bill is determined rather by the allegations and relief prayed, than the title it assumes. A bill filed for the sale of a deceased's estate in default of personal assets, commonly known as a creditors bill, will operate as such although it does not profess to be filed on behalf of any other creditor than the complainant. 2 *H. & G.*, 192, 233. 10 *G. & J.*, 100. So where a bill is filed for relief, nominally in one character, and alleges facts showing the complainants are entitled to relief in another, relief will be granted according to the allegations and the proof. 2 *Md. Ch. Dec.*, 199. Many other examples might be cited, but these are sufficient to show that the chancery or equity pleadings of this State are not held to a rigid compliance with the rules of English practice, or the technicalities that control proceedings at law. 5 *G. & J.*, 451. 1 *Md. Ch. Dec.*, 156.

As to the allegations of the devise from Sarah Elder, and mesne devises, and sale to the appellant, which constitute the new matter referred to in the sixth objection, these, in our opinion, are but a statement of the chain of title from one of the original defendants to the appellant, who standing in the place of said Sarah, and claiming under her, is properly responsible for whatever she would be held to account. If Sarah had sur-

vived and continued to enjoy the whole rents and profits, she would be chargeable with them as a set-off to her claim *pro tanto;* the account springs out of the subject matter of the original decree, and is not, strictly speaking, a new matter of litigation.

We concur with the court below in the decree adjusting the principles of the account for the rents and profits, and the allowances for improvements.

The proceedings being defective for want of proper parties, the cause is remanded under the Act of 1832.

*Cause remanded under Act of* 1832, *ch.* 302.

(Decided June 26th, 1862.)