(Decided June 18th, 1895.)

---

## JAMES MONROE ZIMMERMAN *vs.* MORRIS B. HAFER AND OTHERS.

*Construction of Wills—Declaration of Testamentary Intention—Erroneous Recital in Will—Devise by Implication—Disinheriting Heir—Reference to Other Instrument.*

Evidence of the declarations of a testator are inadmissible to establish his testamentary intention or to aid in the interpretation of his will.

If a will does not itself purport to make a particular devise, then no matter how plainly it may appear by some other paper that the testator designed that title should pass to certain property, it does not pass under the will, in the absence of apt words, or of a clear intent, that the title should pass by the will and not by the other paper.

If an erroneous recital in a will be of a gift contained in the same instrument, the recital may operate as being in itself a devise or bequest by implication of that very property. But where the erroneous recital refers to an estate created by another instrument, such recital cannot operate to create an estate by implication.

An explicit declaration in a will that the heir shall not inherit, is wholly ineffectual to defeat his right, unless there be a valid devise of the estate to some one else.

A executed a voluntary deed conveying certain land to B, and on the same day he made a will in which, after reciting the execution of the deed, he gave and bequeathed to B all his personal property of every description, and declared that he thus gave all his estate to B, "because he is married to my niece, and I have been living with them for

many years, and have a high regard and affection for them, and desire that they shall enjoy the same to the exclusion of my other relatives." A few days after the execution of the deed and will, the testator died, and upon a bill in equity against B by the heirs at law of A the deed was vacated, because it had been obtained by undue influence. B was in possession of the land and then filed a bill *quia timet* to have his title to the same established under the will, and to restrain the heirs at law of A from asserting title. *Held,*

1st. That B had no title to the land under A's will, because the same does not purport to dispose of real estate or to devise the land in the event that the deed should not be operative.

2nd. That the expression in the will of the testator's desire that B should enjoy the property cannot operate as a direct devise or as a devise by implication, because the whole clause pre-supposes that the land had been disposed of by the deed, and there was no intention to give the same by the will.

Appeal from a *pro forma* decree of the Circuit Court for Washington County dismissing the appellant's bill of complaint. The case is stated in the opinion of the Court. The will of John Bitner, duly admitted to probate, under which the appellant claimed title to the property in question, was as follows, after the introductory clause :

"*Whereas,* I have this day made and executed a deed conveying to J. Monroe Zimmerman the farm whereon I now reside, I do hereby give and bequeath unto him, the said James Monroe Zimmerman, all my personal property of whatever description and wheresoever situate. I thus give to the said J. Monroe Zimmerman all my property and estate, because he is married to my niece and I have been living with them for many years, and have a high regard and affection for them, and desire that they shall enjoy the same to the exclusion of my other relatives."

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, ROBERTS and BOYD, JJ.

*Alexander Neill* and *J. Clarence Lane,* for the appellant.

The testimony abundantly shows such surrounding facts and circumstances as would presumptively lead the testator

to do precisely what he ·did do, provide both by will and deed for the transfer of his property and estate to the man for whom he had for years intended it. "The Court should be placed in possession of all the surrounding facts and circumstances connected with the testator, and which tend to show his relation to the persons and things to which his devise may refer." *Stokeley* v. *Gordon*, 8 Md. 496 ; *McCorn* v. *McCorn*, 100 N. Y. 511.

That there is a gift by implication from the whole will, and especially from the clause expressing the desire that they should enjoy his property to the exclusion of his other relatives. *Beach on Wills* § 335 ; 2 *Roper on Legacies*, 350. "A gift may arise from implication, but the implication must be a necessary one. The probability of an intention to make the gift implied must appear so strong, that an intention contrary to that which is implied can not be supposed to have existed in his mind." *Bishop* v. *McLellan*, 44 N. J. Eq. 450 ; (1 L. R. A. 551); *Post* v. *Hover*, 33 N. Y. 599 ; *Ridgely* v. *Bond*, 18 Md. 433 ; 448. "There may be a legacy by implication, but to raise such implication, it must be necessary to do so in order to carry out a manifest and plain intent of the testator, which would fail unless such implication be allowed." *Bartlett* v. *Patton.* 33 W. Va. 71 ; (5 L. R. A. 523.) "A devise by implication will be upheld when it is manifestly intended by the testator, although not made in formal language." *Masterson* v. *Townshend*, 123 N. Y. 458 ; (10 L. R. A. 816 & n.) "Where, from the language of a will, there is no doubt of the testator's intention, the mandatory provision may be broadened and supplied by the Chancellor, in order to carry out the intention of the testator." *Peynado* v. *Peynado*, 82 Ky. 5. "A declaration by a testator in his will of his having given something, though in fact he had not, is sufficient evidence of his intention to give and amounts to a gift." *Beach on Wills* § 335 ; *Smith* v. *Fitzgerald*, 3 Ves. & B. 7 ; *Marsh* v. *Hague*, 1 Edw. Ch. 174.

*Norman B. Scott, Jr.*, (with whom were *Alexander Armstrong* and *W. J. Zacharias* on the brief), for the appellees.

The plaintiff in this case had the right, and it was his duty, to avail himself of all the defences that he could make, as defendant in the other case. He elected to stand upon the deed and that alone, and he can not now come in in this suit and set up a matter that he could have used in the other case. *Walsh* v. *C. & O. Canal Co.*, 59 Md. 427; *Aurora* v. *West*, 7 Wall. 82.

In the present case the plaintiff has offered a great mass of testimony consisting largely of alleged declarations made by John Bitner in his lifetime to the different witnesses to the effect that he intended J. Monroe Zimmerman to have his farm, to all of which testimony exceptions have been taken by the defendants. Such evidence is clearly inadmissible. There is nothing uncertain, ambiguous or obscure in John Bitner's will. His intention and purpose are made clear by the terms of the will itself, and extrinsic evidence is never admissible to show a different intention from that the will discloses. *Hawman* v. *Thomas*, 44 Md. 43; *Warner* v. *Miltenberger*, 21 Md. 264; *Hammond* v. *Hammond*, 55 Md. 581; *Kelleher* v. *Kernan*, 60 Md. 447; *McAleer* v. *Schneider*, 2 App. Cas. D. C. 461.

The will is plain on its face. It does not dispose of the farm, and from a careful reading and analysis of its terms it is manifest that John Bitner never intended that it should. But even assuming that the word "*thus*" as used in the will is intended to apply to and include the introductory sentence, wherein he states that he has made a deed of the farm to Zimmerman, it can not be argued for one moment that he intended thereby to dispose of the farm by the will. On the contrary, it emphasizes the conclusion that he did not do so and did not intend to do so. In using the terms, "I thus give," &c., he only intended to refer to the *manner* in which he had given his property, viz., the farm by the deed, and the personal property by the will, and then follow the reasons for his so disposing of them, and in the expression

"desire that they shall enjoy the same," it can only mean that he desired that they should enjoy it in the *manner* in which he had disposed of it. It is again submitted, however, that upon a careful reading of the whole will nothing is disposed of under it but the personal property, and that the explanatory clause refers to that and that alone.

McSHERRY, J., delivered the opinion of the Court.

On the twenty-second day of February, eighteen hundred and ninety-two, John Bitner made, executed and duly acknowledged a deed of gift conveying to James Monroe Zimmerman a valuable farm lying in Washington County; and afterwards, on the same day, he executed and published his last will and testament, whose exact words and provisions, in so far as they relate to the pending controversy, will be set forth in full later on. Five days after the execution of these two instruments Bitner died. Shortly thereafter the deed was placed on record, and then the sister and other heirs at law of the decedent filed a bill in equity against the donee Zimmerman, alleging that the deed had been procured by undue influence, and praying that it be cancelled, set aside and annulled. Upon final hearing a decree was passed vacating the deed, and upon appeal to this Court that decree was affirmed on the fourteenth day of March, 1894. *Zimmerman* v. *Bitner et al.*, 79 Md. 115. On the thirteenth of the following June, Zimmerman filed a bill on the equity side of the Circuit Court for Washington County, alleging that since the death of John Bitner, he, Zimmerman, had been in possession of the farm above referred to, claiming title thereto under the provisions of John Bitner's *will*; and further charging, that the heirs at law of the testator dispute the validity of that will, and threaten to oppose the plaintiff's title to the farm thereunder. The relief prayed was that the will might be construed; that the plaintiff's title to the land might be declared to be an absolute fee-simple title *under the will*, and that the defendants might be restrained by injunction from asserting

as heirs at law of John Bitner, any title to the farm.    A
*pro forma* decree dismissing the bill was passed by agree-
ment, and thereupon this appeal was taken.

The material parts of the will are in these words:
"Whereas, I have this day made and executed a deed con-
veying to J. Monroe Zimmerman the farm whereon I now
reside, I do hereby give and bequeath unto him, the said
James Monroe Zimmerman, all my personal property of
whatever description and wheresoever situate.

"I thus give to the said J. Monroe Zimmerman all my
property and estate because he is married to my niece, and
I have been living with them for many years, and have a
high regard and affection for them, and desire that they
shall enjoy the same to the exclusion of my other relatives."

The sole question to be considered is, whether Zimmer-
man, having failed to establish a title to the farm under the
deed of gift under which he at first claimed, but which was
annulled in the former proceeding, can successfully assert
any title thereto under the above cited provisions of the
will.    As indicating what Bitner's testamentary purpose
was a large mass of testimony was taken to prove John
Bitner's declarations covering a number of years; but
this evidence is clearly inadmissible either to establish
what his testamentary intention was, or to aid in the
interpretation or construction of his will.    Just as he has
written his will, it must stand.    What he meant to say
must be gathered from what he did say therein, as viewed
from the standpoint that he then occupied; and what he
did say in the will itself, and not what he previously
declared, no matter how unequivocal its import may be,
must solve the question before us.    In construing a will
effect is undoubtedly to be given to the intention of the tes-
tator, if that can be done without violating any legal prin-
ciple.    But to what intention must effect be given?    That
manifested in some other paper not made a part of the will?
or that disclosed on the face of the will?    If to the latter,
as is incontestably the case, then there must be apparent on

the will itself an intention to do something *by* the will; and
if the will does not undertake or purport to do a particular
thing—to make a particular devise—then no matter how
plainly it may appear by some *other* paper that it was de-
signed title should pass to certain property, the will cannot
be held to pass that title in the absence of apt words to
carry it, or in the absence of a clear intent that title should
pass, not by the other paper, but by the will.

It is perfectly obvious that the will makes no direct dis-
position of the real estate. It expressly recites that the
testator had on the same day conveyed the farm to Zimmer-
man by deed, and it then proceeds to give to him, not the
farm, but personal property only. Having done this the
testator immediately assigns, in the next paragraph, a rea-
son for what he had done—that is to say, he explains why
he had given the real estate by the deed and the personal
property by the will—but there is nothing in the language
thus employed to indicate the most remote intention to give
anything whatever by this purely explanatory clause.
After first stating that he had made the deed conveying the
farm, and then distinctly bequeathing his personal estate, he
declares, not by way of further devise or bequest, but by
way of explanation of what he had already done, "I thus
give to the said J. Monroe Zimmerman all my property and
estate, because he is married to my niece, &c.;" and he
then expresses his desire that they, the beneficiaries, "shall
enjoy the same"—the real estate given by the deed and the
personal estate given by the will—"to the exclusion of my
other relatives." But if the deed failed from any cause to
convey the land, the mere expression in the will of a wish,
that the donee should enjoy that which the testator then
supposed he had given him by the deed, cannot operate as
a direct devise of the land, or as a devise thereof by neces-
sary implication, even though coupled with a declaration
that he desired his other relatives to be excluded from any
participation in his estate. If the deed had been sustained,
Zimmerman would have held title under it and not under

the will. Clearly he could not have held the same estate under both the deed and the will at the same time. If the deed had prevailed he would then have held under it, and it only, because it would then have conveyed the grantor's entire interest to the grantee, being ostensibly a deed in fee-simple. If it had effectively conveyed a fee, then it would have divested the grantor's whole interest in the property, and having been executed prior to the will, there would have been no estate left in the grantor for the will to operate upon. But as the deed was in form sufficient, had it been allowed to stand, to convey to the donee the grantor's entire title to the farm, the will, which does not purport or even inferentially profess to give the same farm to the same or to any other person, in the event or on the contingency that the deed should fail to be operative, cannot, upon any known rule of construction, be interpreted as alternatively disposing of the property that failed to pass under the deed. The deed was stricken down because it was void, and it was void because it had been procured by undue influence. It was consequently tainted from the beginning. Now, the recital in the will following the word "whereas," is to the effect that the testator had, by an instrument other than the will given to Zimmerman, the farm named in the recital; but in truth and in fact, though he had executed the deed, he had not, by reason of the deed's invalidity, conveyed that property to Zimmerman at all. This recital in the will was, or at least turned out to be, erroneous, because the deed did not convey the title, though it was actually made and executed. Such an erroneous recital does not disclose a purpose or intention on the part of the testator to give the same property by the will.

The doctrine as to the effect of erroneous recitals in wills is well established, namely, that if the erroneous recital in a testamentary instrument be of a gift contained in this instrument, the recital may operate as being in itself a devise or bequest by implication of that very property. But where the erroneous recital refers to an estate created by another

instrument, that recital cannot operate to create an estate by implication. *Harris* v. *Harris*, Ir. R. 3 Eq. 610; *Adams* v. *Adams*, 1 Hare, 538; *Holten* v. *Den*, 23 N. J. L. 330; *Hurlbut* v. *Hutton*, 42 N. J. Eq. 15; *Hunt* v. *Evans*, 11 L. R. A. 185. In any event the implication must be a necessary one. *Ridgely* v. *Bond*, 18 Md. 448. Mr. Theobald, in his *Treatise on Wills*, p. 420, classifies implications by recital, two of which are : (1.) "A recital that a person is entitled under another instrument, when he is not in fact entitled, does not in general amount to a gift by the instrument which contains the recital. *Harris* v. *Harris*, Ir. R. 3 Eq. 610 ; *Circuit* v. *Perry*, 23 B. 275. (2.) But a recital that the testator has by the very instrument containing the recital made a particular gift which he has not in fact made, is evidence of an intention to confer the bounty. *Adams* v. *Adams*, 1 Hare, 537." Thus where a testator bequeathed unto A, his wife, £600 to be paid to W., saying it was for payment of lands lately purchased of W., *and was already estated as part of a jointure to A, his wife, during her life,* being of the value of £67 per annum ; that of Wiskow, York and Malton, the lands there amounting to the yearly value of £63, in all £130, which *being also estated upon A, his wife, was in full of her jointure.* It appeared that these lands had not been settled on the wife. It was held by POL-LEXFEN, C. J., ROKEBY and VENTRIS (POWELL, J., *dissentiente*), that these expressions did not amount to a devise to the wife, for it appeared "that the testator did not intend to devise her anything by the will, for he mentions that she was estated in it before." 2 *Jar. Wills*, ch. 17, p. 105 ; (5th Am. Ed.)

The recital in John Bitner's will has no reference whatever to a gift or devise created *by* or *under the will*, but it refers solely to a gift by deed in no manner connected with the will at all, and consequently that recital has no efficacy to pass the property as a devise by implication.

The *desire* expressed in the explanatory clause to the effect that Zimmerman and his wife "shall enjoy the" prop-

·erty, cannot operate either as a direct devise of the land or as a devise thereof by implication ; because the whole clause ·containing these words necessarily pre-supposes that both the real estate and personal property had been previously ·disposed of; the one by the antecedent deed, the other by the preceding item of the will.    To make this clause operate as a devise of the real estate by implication, a construction must be put upon it which imputes to the testator an intention he manifestly never had, namely, an intention to dispose of the land by the will and not by the deed.    A devise by implication strictly arises where the devisor, meaning to part whith his interest, parts expressly with a portion of it only ; and the question is, whether that which is not in terms given is by the effect of the will taken altogether disposed of.    Where, for instance, an estate is given to B after the death of A, the question is, what is done with it, or whether anything is meant to be done with it during A's life.    If B is the heir at law, of necessity A must take the intermediate interest, though not disposed of, as the heir at law cannot take during the life of A.    *Dashwood* v. *Peyton,* 18 Ves. 27.    Obviously, then, when the testator does not undertake to give by his will *any* portion of his estate in a particular parcel of property, there can be no gift by implication of his *whole* estate therein.    There being no gift of any *part* of it there is nothing to found the implication on that a gift of the *whole* of it was intended.    In the total absence of even a partial disposition of the property, if it be held that the whole of it passes because of the use of words ·excluding other persons than the one making claim, this would be conjecture and not implication at all.    And when to this condition is added the further manifest intention that the particular property should pass by some other instrument, not only can no devise by implication arise, but a ·devise of any kind is unequivocally rebutted.

It is true that in some instances Courts have upheld a devise by implication where it has been very apparent. and necessary to give effect to the plain intention of the testator.

But in cases of this character the implication must be obvious, and not merely possible or probable; for the title of the heir at law being plain, no words in a will ought to be construed in such a manner as to defeat it, if they can have any other signification. *Ridgely* v. *Bond*, 18 Md. 448; *Cruise Dig. Title, Devise*, ch. 10, sec. 18.

Nor is the appellant's contention strengthened by the expressed desire that the testator's other relatives should be excluded from participating in the distribution of his estate. And this is so, because, as said by LORD MANSFIELD in *Denn Gaskin, Cowp.*, 657, "though the intention to disinherit the heir be ever so apparent, he must, of course, inherit, unless the estate is given to somebody else; and the reason is that the law provides how a man's estate at his death shall go, unless he, by his will, plainly directs that it shall be disposed of differently." See *Coffman* v. *Heatnole*, 2 L. R. A. 848, and notes. An explicit and unequivocal declaration, therefore, that the heir shall not inherit, will be wholly ineffectual to defeat his right, unless the estate be given by the will to some one else. Hence, no matter how emphatically the testator asserted that he did not wish his other relatives to have any portion of his estate, still, as he failed by the will to devise his real estate to any one, it passed by operation of law to John Bitner's heirs upon the deed being stricken down.

Much was said in the argument about the duty of the Court to construe the will as persons of ordinary intelligence would construe it, and we were strenuously urged "to do simple justice to the plaintiff in this case." In *Ralph* v. *Carrick*, 5 Ch. D. 984, SIR. H. COLTON pointed out the fallacy that subject to established rules, the duty of the Court was to construe the will as a person of ordinary intelligence would do. "Of course," said the Lord Justice, "we are bound by the rules which have been established by the Courts to enable us to say what the words used do mean. Subject to that we are bound to construe the will as trained legal minds. And that differs from the mind of an ordinary

person in this way, that even persons of ordinary intelligence not so trained, are accustomed to jump at the conclusion as to what a person means by the words he uses, by fancying he must have done what they under similar circumstances think they would have done. That is conjecture only; and conjecture on an imperfect knowledge of the circumstances, because, although, if the facts before them and in evidence were all the facts, they may think that they would have taken a particular course, yet it does not follow that all the facts known to the testator are in their minds or in evidence before them, or that the testator's mind was in any way constituted, as regards the attention he paid to the rights and claims of the different parties dependent upon him, as their minds are constituted, or that he would have acted in the same way as they. Therefore, as lawyers, we must construe the will like any other document," with one difference only, viz., that technical words are unnecessary in a will. 2 *Jar. on Wills,* 115 (5th Am. Ed.)

There being no error in the *pro forma* decree dismissing the bill of complaint, it will be affirmed with costs above and below.

*Pro forma decree affirmed with*
*costs above and below.*

(Decided June 18th, 1895.)